Good morning. I am Tisha Moreno and I'm representing Mr. Estrada in the present case. We are asking the court at this time to actually grant Mr. Estrada cancellation and removal for the non-immigrant. The judge has already made a finding that there is extreme extraordinary hardship, that he does meet the physical requirement. The only issue is a good moral character issue and in that case... And that all turns on his conversations and his money with the Davis brothers, is that correct? Correct. Correct. The government doesn't contend that there was not real hardship here, is that right? So the only issue is the good moral character? Correct. On a particular BIA that was not brought up as an issue, it is brought up in the brief before the Ninth Circuit, but again, they didn't exhaust the remedies with regards to that issue at the BIA. So we are looking at what is a smuggler, what is aiding and abetting, and it all rests on the testimony that exists. That's the only evidence that exists. And the testimony is minimal. Well, you say minimal, but he sent money to him and understood that his brother didn't have any documents and that the money was, quote, going to be paid to a smuggler. He never said that he understood that the money was going to be paid to a smuggler. The judge asked him and the trial attorney asked him, what do you think? And he said he must have been to pay to a smuggler. But then he also said, but I don't know. So and further, when questioned in further detail, Mr. Stratus says, we didn't discuss that. We didn't discuss that on the telephone. It wasn't discussed. So we're having an issue here of we have the element where money is being sent to Mexico, but never is there any evidence that there was an illegal entry that occurred. We need, before we get to D, we need A, B, and C, and we're missing some elements in between. What? What elements are we missing? We have no evidence that there was an illegal entry by Mr. Stratus' brother, Francisco Stratus. There is no evidence there was an illegal entry. Does that make a difference? It makes a difference under the regulations for aiding and abetting, because it says aiding and abetting. The question was he didn't find good moral character. He didn't find, statutorily, he found no good moral character that made him inadmissible. And that was because he believed that his brother, the money was sent to his brother to hire a smuggler to get him over here, right? No, he never stayed, Mr. Stratus never stayed. I'm sorry, but that's the position, if you will, of the I.J. That's his position and that's a presumption, it's an inference that was drawn. But you said that it would be necessary that his brother cross the border, and I ask you why is that necessary to a finding of lack of good moral character? It is necessary because this is a statutory, the judge is denying this on a statutory basis, saying that he's inadmissible. It's necessary to show that there was actually an illegal act that occurred. Well, other than Ipsy Dixit, you just said it, but why is it necessary? Tell me why, what compels that the brother actually get across. We need to show an illegal entry. The service talks about monies being sent to an illegal alien in Mexico. First of all, when his brother was sent to a brother in Mexico. Okay. And that container was sent to a brother, that's correct. For the purpose of? For the purpose of coming to the United States. But we don't know. But the brother could have used that money to get here lawfully, correct? Well, that's my point. We don't know, right? Yes, exactly. Isn't that the whole point? Exactly, and that wasn't fleshed out. That wasn't fleshed out. In the testimony, there is no evidence. We're not going to assume that just because he's Mexican, he's coming here illegally, that he's coming with a coyote, we can't assume that as a fact of law or a fact to apply this law. Because nothing is mentioned, was he going to go to the consulate to pay for the money for a visa? Nothing is mentioned to that regard. An inference is made. And, in fact, when the BIA makes the decision, they say that, okay, the judge specifically found the Respondent not satisfy the good moral character requirement based upon testimony he did his brother by specifically, by sending him money specifically to fund his illegal entry. He never said specifically to fund an illegal entry. Mr. Stratton never said that. And for the BIA, presumably by a smuggler, presumably. There's a presumption. And when you're looking at the elements of what is aiding, because the judge says a minimum that was aiding with regards to smuggling, when you look at those elements, you have to use a substantial evidence test. That means that the relevant evidence, that a look at the relevant evidence as a reasonable mind might accept is adequate to support a conclusion. And my contention is that that was not reached. That substantial evidence requirement was not used in this particular case. So you can't, I guess going back, you cannot find a man guilty on presumption. Now, the testimony that continues further, not the testimony. What's the best case that helps you? What's the best case that helps me? Yes. What's your best case? Elton Morano. Let's see if I pronounce this right. Covarrubias. Because that's, they cite Covarrubias as this is the case. This is it. But it's not because it's distinguishable. Clearly, in this particular case, the brother that sent money to his other brother in the other country is collecting money, actively collecting money for funds to fund a peyote to come in. So here we have an act that's been admitted. Knowledge has been admitted. And my client in no time admits knowledge. And in no time does anything actively to aid. So, you know, going within the meaning of aiding. What is aiding? Because that's the only word that the judge is using. There was no active action. And this action, affirmative action, has to be illicit. And nowhere, that's what the case says. The case says affirmative action has to be illicit action. And nowhere does the service state where the illicit action is. In fact, the service, as they're going through their argument, keeps mixing the testimony and also reaching conclusions and assumptions. So that's flawed. The brief that's being submitted, it's flawed, too, in the way it uses the testimony. So I would like to use your two minutes for a brief item. That's fine. Good morning. May it please the Court. Monica Anton for the government. The point is not how Mr. Estrada entered the country, whether he used a smuggler or not, but whether he entered unlawfully. And since we know he has no status in the U.S., as Mr. Estrada testified, he couldn't have entered lawfully. He couldn't have gone to a consulate and presented any documents because he didn't have any. Furthermore, it's Mr. Estrada's burden to show that he did not aid in this act. So if, in fact, his brother had entered the country lawfully, then Mr. Estrada should have presented evidence to show how his brother entered. What burden? Isn't it the government's burden to show that the questioned individual entered illegally? Well, Mr. Estrada was charged with unlawful presence in the U.S. So what this turns on is his eligibility for cancellation, and it's his burden as the applicant to show that he has the good moral character. So in this case, he conceded the charge of removability, and he must show that he does not lack good moral character. And the statute defines good moral character, or defines as a bar to good moral character aiding in unlawful entry into the U.S., which is precisely what Mr. Estrada admitted to. Well, I've got the transcript right here. And in no place does he admit that he gave the money to his brother to go to a smuggler. He doesn't admit that the brother used a smuggler, just said that's the way it's usually done. And that's the most evidence that there is. Is that not right? Well, it doesn't matter whether he used a smuggler. What matters is whether the entry was unlawful. And he does say, well, he asked me if I could lend him money for him to come to this country. And he then admits. There's nothing illegal about that, is there? Well, there is if you have no lawful mean of entry. And Mr. Estrada. We don't know from this whether the brother had any lawful or unlawful means to enter, do we? Well, Mr. Estrada believed that his brother did not have a lawful means of entry. And it's his burden as the applicant to show that his brother did have a lawful means of entry. Really? All the brother did was he loaned his brother money. That's it. For the purpose of coming to the U.S., knowing that his brother could not come here lawfully. And that's the key, that he knew that his brother had no way of coming to the U.S. lawfully. And he provided him money to enter the country. Well, like I said earlier to this other counsel, it could have been go talk with a lawyer. You get money for whatever purposes you want. It could have been to pay for an airplane ticket. But if that entry was unlawful, then it's still aiding the... But we have no proof that it was unlawful. Excuse me, the government, that's the government's burden. It's not. It's the applicant's burden of proof. Because that definition of good moral character is incorporated into the eligibility requirements for cancellation of removal. And as the applicant, Mr. Estrada, bears the burden of showing that he does not lack good moral character. So once that was put at issue... What's put at issue? DHS counsel inquired into it further. So it came up really on cross-examination. And the immigration judge did identify the issue, did provide the opportunity, the parties an opportunity to brief the issue, and did take briefs before issuing his written decision. Mr. Estrada could have submitted more evidence showing that either his brother didn't use the money for that purpose, or that he did enter lawfully, but he didn't. So he did not carry his burden. If Mr. Estrada has no information as to how his brother entered, how can he be charged with bad moral character? Well, he knows that his brother did not enter lawfully. It doesn't matter how his brother entered. The key is whether it was a lawful entry or an unlawful entry. And he knew it was unlawful, however it was, whether it was by plane or by smuggler. He doesn't know how his brother entered. Right. From the evidence that we have. Right. But what he does know is that his brother was in Mexico with no lawful means of entry and is now at his home with no status. But he might not have used the brother's money to do this. But his brother asked him for the money for that purpose. So as far as Mr. Estrada knew, his brother was using the money for that purpose. So he knew when he gave his brother the money that that's why his brother wanted it. And as the immigration judge points out, he could have tried to dissuade his brother from coming to the U.S., but he never did that. He gave him the money. Certainly that's not an obligation to tell your brother what to do. No, but it shows his intent, his knowledge. So because he gave him the money knowing that he wanted to use it to come to the U.S., then he aided. He did this affirmative act of giving him the money for him to enter the U.S. unlawfully. And those are the keys to this. We don't know how long between the time he sent the money and the time the brother came. We don't know what the brother used it for. But the brother specifically asked him for the money to come to the U.S. He didn't say, I want to use the money to come here illegally. He didn't say, I'm going to use it to get a smuggler. I just need some money in order to come. Mr. Estrada gave him the money for him to come to this country. He so testified to that. And it's that belief, that knowledge that he was sending him the money for this purpose of coming to the country that is the key to the statutory definition of good moral character in this case. And because Mr. Estrada knew that his brother had no lawful means of entering, knew he was providing his brother money to come to the country, and believed that his brother would not have been able to afford it otherwise,  Well, you know, if you read the transcript, there's very little here. There really is. And it's Mr. Estrada. Sir, your girlfriend said that you sent money to your brother in Mexico. Is that correct? Yes, it was. And what was your brother supposed to do with this money? Well, he asked me if I could lend him money for him to come to this country. So I don't know. Did your brother say he was going to use the money to get a smuggler to help in entering the United States? I don't know. We did not speak about this. He just asked me if I would lend him some money. Right. So what's wrong with, I mean, you know. Well, that's the beginning of it. Send my brother $1,000 in Mexico. Sure. It happens all the time. Sure. But he believes that he needs to. Is there anything wrong with that? If it were just for no reason. But he says that it's for to come to the country. Well, maybe he needed, do you know where his brother lived in Mexico? I believe it was Jalisco. I don't remember off the top of my head. Do we know how his brother was going to even get to the border? No, we don't need that information, though. What we need to know is. Suppose we knew that the brother used that money just to travel in Mexico to come to the border area. Well, I believe if there was, if his brother never entered the country then, or if he had tried to enter. Well, suppose he just used that money and traveled to the border and then, you know, when the money was all gone,  Well, he still facilitated the unlawful entry. So he facilitated, by helping his brother just travel to the border area. Right. And then the border, and then the brother on his own somehow or other gets across the border. Right, because that money was used to eventually enter the U.S. Because it has a connection to the unlawful entry. I think we understand your position and her position. We've probed both of you. May I answer any more questions? Thank you. You had a minute or two for rebuttal. Yes. You were on it. There is no case law that says that coming from Jalisco to Tijuana with the money is, would constitute somebody aiding and abetting traveling within the country. And, again, I'm just going to reiterate what she said. The point is whoever the brother entered unlawfully, the key is aiding an illegal entry. And counsel argues, states that Mr. Estrada said that he knew he did not have, that his brother did not have a means, did not have a lawful means of entry, and that simply is not in the record. So I submit. Thank you. Thank you. Thank you, counsel, for your argument. The matter is submitted. Let's see. There was another case on the calendar. Zhao, I'm not sure if I'm pronouncing it correctly. Zhao versus Holder.
judges: Walter, Fletcher B. , Paez